GORTE v DEPARTMENT OF TRANSPORTATION

Docket No. 142435. Submitted April 15, 1993, at Grand Rapids. Decided October 18, 1993, at 9:35 A.M.

C. Michael Gorte and Priscilla L. Gorte brought an action in the Saginaw Circuit Court against the Department of Transportation on March 3, 1988, seeking to quiet title to a parcel of realty that adjoins their parcel. The plaintiffs, who purchased their parcel in 1984, claimed title to the adjoining parcel on the basis of adverse possession, contending that they and their predecessors in interest have adversely possessed the parcel since 1966. After a bench trial, the court, Leopold P. Borello, J., entered judgment in favor of the plaintiffs, rejecting the defendant's contention that MCL 600.5821(1); MSA 27A.5821(1), as amended by 1988 PA 35, effective March 1, 1988, barred the plaintiffs' claim of adverse possession and the contention that adverse possession was not established. The defendant appealed.

The Court of Appeals *held:*

1. Before its amendment, § 5821(1) permitted acquisition of title to state-owned land through adverse possession by one who maintained actual, visible, open, notorious, exclusive, continuous, and uninterrupted possession during the fifteen-year period within which the state could have brought an action to recover possession. The amended statute reinstated the common-law rule that title to state-owned property cannot be acquired through adverse possession. In this case, because title to the disputed parcel vested in the plaintiffs upon the expiration of the fifteen-year period during which the defendant could have brought an action to recover possession and because application of § 5821(1), as amended, would abrogate or impair the plaintiffs' vested rights, the amended statute cannot be applied.

2. The plaintiffs established that possession of the disputed parcel was hostile by showing that they and their predecessors

REFERENCES

Am Jur 2d, Adverse Possession § 269.

Acquisition by adverse possession or use of public property held by municipal corporation or other governmental unit otherwise than for streets, alleys, parks, or common. 55 ALR2d 554.

in interest had intended to hold to a particular boundary regardless of the true boundary line, and the trial court did not clearly err in finding that possession and use was not permissive.

Affirmed.

ADVERSE POSSESSION — STATE-OWNED REALTY.

1988 PA 35, effective March 1, 1988, which reinstated the common-law rule that title to state-owned realty cannot be acquired through adverse possession, does not bar a person from acquiring title to state-owned realty by adverse possession where actual, visible, open, notorious, exclusive, continuous, and uninterrupted possession continuing from at least fifteen years before March 1, 1988, can be established (MCL 600.5801[4], 600.5821[1]; MSA 27A.5801[4], 27A.5821[1]).

*John M. Callison,* for the Gortes.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Patrick F. Isom* and *Thomas P. Scallen,* Assistant Attorneys General, for the Department of Transportation.

Before: NEFF, P.J., and MCDONALD and MURPHY, JJ.

MURPHY, J. Defendant appeals from the judgment of the Saginaw Circuit Court granting plaintiffs title by adverse possession of certain real estate that defendant claims is owned by defendant and Melvyn Gaitley. We affirm.

This case arises out of a dispute over a 13.59-acre parcel in Saginaw County adjacent to land owned by plaintiffs. In 1984, plaintiffs purchased twenty acres from James and Jean Brisbois, mistakenly believing that the twenty acres included the acreage now in dispute. While the property appeared to include paddocks, outbuildings, a horse-training track, and a portion of a lake, most are within the disputed acreage. According to plaintiffs, the Brisboises' real estate agent assured

them that the property boundaries were as described by the Brisboises. Plaintiffs did not have the property surveyed, however, and the parties now admit that defendant had record title to the disputed acreage.

In June 1986, defendant informed plaintiffs that it owned the disputed acreage and that it was placing for sale at public auction a parcel that included part of the disputed acreage. Plaintiff Michael Gorte attended the auction, as did plaintiffs' neighbor, Mr. Gaitley, who informed plaintiff that he intended to bid on the parcel. To avoid a bidding war, the two men signed an agreement that plaintiff would refrain from bidding in exchange for Mr. Gaitley's conveying that portion of the disputed acreage to plaintiffs. After purchasing the parcel, however, Mr. Gaitley did not convey that portion of the disputed acreage to plaintiffs.

In October 1986, plaintiffs learned that defendant was selling at auction a U-shaped parcel of land that included the remainder of the disputed acreage. Plaintiff Michael Gorte attended the auction, but neither plaintiff nor anyone else bid on the property at auction. Plaintiffs then negotiated with defendant to purchase the portion of the disputed acreage contained in the U-shaped property, but were unsuccessful. Mr. Gaitley later purchased the entire U-shaped parcel from defendant.

On February 12, 1988, plaintiffs filed an action to quiet title against Mr. Gaitley, seeking to establish their rights to the property. Plaintiffs then filed suit against defendant on March 3, 1988, asserting adverse possession of the disputed acreage on the basis of their and their predecessors' possession of the property. On July 31, 1990, plaintiffs sued the Brisboises and their real estate agent for misrepresentation regarding the property con-

veyed to plaintiffs. The circuit court consolidated the three suits.

During the bench trial, James Brisbois testified that he and his wife owned and used the disputed acreage from 1973 through 1986, during which time he maintained and improved the property. Mr. Brisbois also testified that in 1973, Kenneth Winter, defendant's representative, had visited the property and told him that he was encroaching on state land. Mr. Brisbois denied that he was encroaching and informed Mr. Winter that he would stay on the property until defendant produced a survey proving him wrong. Mr. Winter testified that he told Mr. Brisbois that he could use the property, but Mr. Winter also acknowledged that Mr. Brisbois never requested permission to use the disputed acreage. John Eychas testified by deposition that he had owned the property from 1966 to 1973 before Mr. Brisbois. He further testified that during that time he maintained the disputed acreage and ejected trespassers.

At the conclusion of the trial, the circuit court held that since 1966, plaintiffs and their predecessors had adversely possessed the disputed acreage. The circuit court held that the newly amended MCL 600.5821; MSA 27A.5821 did not bar plaintiffs' adverse possession claim because their interest in the property vested before March 1, 1988. The circuit court further held that, even if plaintiffs and their predecessors had not adversely possessed the property, Mr. Gaitley was contractually obligated to convey the disputed acreage to plaintiffs. The circuit court also dismissed plaintiffs' complaint against the Brisboises and their real estate agent.

I

Defendant first contends that the circuit court

erred in holding that plaintiffs have title to the disputed acreage, arguing that they are precluded by MCL 600.5821; MSA 27A.5821, as amended by 1988 PA 35, from asserting a claim of title by adverse possession. Actions to quiet title are equitable, and we therefore review the circuit court's holdings in this case de novo. *Michigan Nat'l Bank & Trust Co v Morren,* 194 Mich App 407, 410; 487 NW2d 784 (1992). We conclude that the circuit court correctly held that plaintiffs were not precluded by MCL 600.5821; MSA 27A.5821 from asserting a claim of title by adverse possession.

The period of limitation for the recovery or possession of land is generally fifteen years. MCL 600.5801(4); MSA 27A.5801(4). The statute of limitations for recovering real property does not run against the state or state agencies, however, unless there is legislation to the contrary. *Caywood v Dep't of Natural Resources,* 71 Mich App 322, 327; 248 NW2d 253 (1976). Such contrary legislation existed before the amendment of § 5821 of the Revised Judicature Act, MCL 600.5821; MSA 27A.5821, by 1988 PA 35, because that section permitted a person to acquire title to state property by adverse possession. *Mackinac Island Development Co, Ltd v Burton Abstract & Title Co,* 132 Mich App 504, 517-518; 349 NW2d 191 (1984); *Caywood, supra,* 331. Before amendment by 1988 PA 35, § 5821 provided, in pertinent part:

No action for the recovery of any land shall be commenced by or on behalf of the people of this state unless it is commenced within 15 years after the right or title of the people of this state in the land first accrued or within 15 years after the people of this state or those from or through whom they claim have been seised or possessed of the premises, or have received the rents and profits, or

some part of the rents and profits, of the premises. [MCL 600.5821(1); MSA 27A.5821(1).]

When the Legislature amended § 5821, it reinstated the common-law rule that one cannot acquire title to state-owned property through adverse possession. That section now provides, in pertinent part:

Actions for the recovery of any land where the state is a party are not subject to the periods of limitations, or laches. However, a person who could have asserted claim to title by adverse possession for more than 15 years is entitled to seek any other equitable relief in an action to determine title to the land. [MCL 600.5821(1); MSA 27A.5821(1).]

This section, as amended, has not been construed by this Court and therefore presents an issue of first impression. When interpreting a statute, we are obligated to determine and give effect to the intent of the Legislature. *Joy Management Co v Detroit,* 176 Mich App 722, 730; 440 NW2d 654 (1989). If the meaning of a statute is clear, judicial construction is neither necessary nor permitted. *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992). If reasonable minds could differ with respect to the meaning of a statute, however, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). We must then look to the object of the statute, the harm that it is designed to remedy, and reasonably construe the statute to best accomplish the purpose of the statute. *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989).

In doing so, we consider the applicable principles of statutory construction. *Rancour v Detroit Edi-*

*son Co,* 150 Mich App 276, 285; 388 NW2d 336 (1986). For example, we presume a change in a statutory phrase to reflect a change in meaning. *In re Childress Trust,* 194 Mich App 319, 326; 486 NW2d 141 (1992). In this case, the language of § 5821(1) permitting the running of the limitation period was removed by the amendment. We therefore conclude that the period of limitation for adverse possession can no longer run against the state.

Another rule of statutory construction important in this case is that statutory amendments are presumed to operate prospectively unless the Legislature indicates retroactive effect. *People v Russo,* 439 Mich 584, 594; 487 NW2d 698 (1992); *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984). Further, a statute may not be applied retroactively if it abrogates or impairs vested rights. *In re Certified Questions,* 416 Mich 558, 572; 331 NW2d 456 (1982). While a procedural or remedial statute is generally excepted from this rule, and statutes of limitation are generally considered procedural, where a period of limitation has expired, the rights afforded by that statute are vested and the action in question is barred. *Russo, supra,* 594-595. Thus, § 5821, as amended, cannot be applied to plaintiffs if it would abrogate or impair a vested right.

Defendant argues that, in amending § 5821, the Legislature intended to void not only causes of action accruing after the effective date of the statute, but also causes of action for adverse possession against the state that could have been asserted before March 1, 1988, but were not. Defendant argues that by providing for equitable relief, the statute cannot be interpreted as permitting plaintiffs to be entitled to relief other than the equitable relief provided by the statute. We

are constrained, however, to follow the rules of statutory construction that dictate that a statute of limitations may not be applied retroactively to take away vested rights. We therefore interpret § 5821, as amended, to preclude the running of the period of limitation against the state for purposes of adverse possession after the effective date of the statute. We further interpret § 5821 as inapplicable where applying the statute would abrogate or impair vested rights.

Because the statute cannot be applied if it would abrogate or impair a vested right, it is necessary to determine when a claim of title to property by adverse possession vests. Generally, the expiration of a period of limitation vests the rights of the claimant. *Russo, supra.* It is further the general view with respect to adverse possession that, upon the expiration of the period of limitation, the party claiming adverse possession is vested with title to the land, and this title is good against the former owner and against third parties. 3 Am Jur 2d, Adverse Possession, § 297, p 390; 2 CJS, Adverse Possession, § 255, p 993. Defendant argues the contrary view, that plaintiffs' possession of the property merely gave plaintiffs the ability, before the amendment of § 5821, to raise the expiration of the period of limitation as a defense to defendant's assertion of title. Contrary to defendant's arguments, however, Michigan courts have followed the general rule that the expiration of the period of limitation terminates the title of those who slept on their rights and vests title in the party claiming adverse possession. *Gardner v Gardner,* 257 Mich 172, 176; 241 NW 179 (1932). Thus, assuming all other elements have been established, one gains title by adverse possession when the period of limitation expires, not when an

action regarding the title to the property is brought.

In a closely analogous situation, this Court applied the rule that title vests when the period of limitation expires. In *Hill v Houghton Twp,* 109 Mich App 614, 616-617; 311 NW2d 429 (1981), the defendant township argued that the plaintiff could not establish title by adverse possession of land owned by the township because a 1907 statute, MCL 600.5821; MSA 27A.5821, abolished adverse possession claims against municipalities. Relying upon our Supreme Court's decision in *Howard v Berrien Springs,* 311 Mich 567; 19 NW2d 101 (1945), this Court held that despite the plaintiff's failure to assert his adverse possession claim before the enactment of the statute, title to the township's property by adverse possession had already vested in the plaintiff because the fifteen-year period of continuous use preceded the 1907 statute abolishing adverse possession claims against municipalities. While the language of the section abolishing adverse possession claims against municipalities differs from that in question in this case, the same rules regarding vesting apply in this case. Thus, we conclude that if plaintiffs met all elements for adverse possession for a period of fifteen years preceding the effective date of the amended statute, plaintiffs' failure to earlier assert the claim in a legal action does not preclude them from now asserting title by virtue of adverse possession.

II

Defendant further contends that even if plaintiffs were not precluded from successfully claiming adverse possession because of the amendment of § 5821, plaintiffs have still failed to establish ad-

verse possession. Specifically, defendant argues that plaintiffs have not established that the possession was hostile because plaintiffs and their predecessors possessed the disputed acreage because they believed it to be within the property line, not because they meant to adversely possess the property. We disagree.

Adverse possession requires a showing of clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the applicable statutory period. *Burns v Foster,* 348 Mich 8, 14-15; 81 NW2d 386 (1957); *Kipka v Fountain,* 198 Mich App 435, 439; 499 NW2d 363 (1993). The possession must also be hostile to the title of the true owner. *Burns, supra,* 14; *Kipka, supra,* 438. Where a landowner possesses the land of an adjacent owner with the intent to hold to the true line, the possession is not hostile and cannot establish adverse possession. *Connelly v Buckingham,* 136 Mich App 462, 468; 357 NW2d 70 (1984). By contrast, where a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established. *Id.* Simply being mistaken with regard to the true boundary line, however, does not defeat a claim of adverse possession. *DeGroot v Barber,* 198 Mich App 48, 53; 497 NW2d 530 (1993). As noted by this Court in *DeGroot,* it would be unjust to limit the application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake, thereby rewarding the thief while punishing the person who was merely mistaken. *Id.* As in *DeGroot,* plaintiffs in this case appear to have intended to hold to particular boundaries, but also believed that the boundary represented

the true line. Plaintiffs therefore fall within the second group of adverse possessors in that they respected a line that they believed to be the true boundary, but which proved not to be the true boundary. *Id.*

Defendant also contends that plaintiffs were unable to establish that the possession of the disputed acreage by plaintiffs and their predecessors was adverse, arguing that plaintiffs' use of the property was permissive. While actions to quiet title are equitable and therefore reviewed de novo, the circuit court's factual findings are not reversed unless they are clearly erroneous. *Morren, supra; Mackinac Island Development Co, Ltd, supra,* 513. After reviewing the record, we cannot say that the circuit court clearly erred in finding that plaintiffs' possession and use of the disputed acreage was not permissive.

Affirmed.